# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BRENDA BINGHAM, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00100 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.  Introduction and Procedural History

Plaintiff Brenda Bingham filed an application for Supplemental Security Income on October 20, 2009, alleging disability since April 1, 2009.[2] (*PageID##* 379-81). Following an administrative hearing, Administrative Law Judge (ALJ) Thomas R. McNichols, II issued a decision dated March 11, 2011, denying Plaintiff's claims for benefits. (*PageID##* 176-89). Plaintiff filed a Request for Review of Hearing Decision, which the Appeals Council granted. (*PageID##* 196-99, 293, 470-74). The Appeals Council remanded the case, directing ALJ McNichols to obtain additional evidence, reevaluate

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Under the controlling regulations, Plaintiff cannot receive benefits for any period prior to the filing of her application for SSI benefits. 20 C.F.R. § 416.335. SSI benefits cannot be awarded retroactively. SSR 83-20, 1983 SSR LEXIS 25, 1983 WL 31249, at * 1, *7 (1983).

Plaintiff's subjective complaints, and "[g]ive further consideration to [Plaintiff's] maximum residual functional capacity during the entire period at issue . . . ." (*PageID#* 198).

After another administrative hearing, ALJ McNichols issued a second written decision partially denying and partially approving Plaintiff's claim. (*PageID##* 49-69). ALJ McNichols concluded Plaintiff became disabled as of May 12, 2012 – the date he believed Plaintiff underwent a surgical fusion of her cervical spine. The ALJ determined that prior to May 12, 2012, Plaintiff was capable of performing medium work and therefore was not disabled. Plaintiff requested the Appeals Council review the portion of ALJ McNichols' decision denying benefits from April 1, 2009 through May 11, 2012. (*PageID##* 172, 487-92). The Appeals Council declined to review the decision, making ALJ McNichols' September 2012 opinion the final administrative disposition of her claim. (*PageID##* 35-37). Plaintiff commenced this action under 42 U.S.C. §§ 405(g).

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #13), the administrative record (Doc. #6), and the record as a whole.

**II.    Background**

    **A.    Plaintiff's Testimony**

At all relevant times, Plaintiff has been over 55 years old and considered to be a person of "advanced age" for purposes of resolving her claim for SSI. *See* 20 C.F.R. § 416.963(e). She has a high school education. Her past relevant employment includes

work as a cashier, food sales clerk, short order cook, and waitress. (*PageID#* 66).

At her administrative hearing in September 2012, Plaintiff testified she was 5' 5" tall and weighs 172 pounds. (*PageID#* 82). She indicated, however, a "more normal" weight for her is around 145 pounds. (*Id.*). She lives alone in an apartment. She does not drive or have a driver's license. The last time she had a driver's license was approximately 9 years ago.

Plaintiff indicated she attempted to work in 2004 at a tavern, but she only worked for a short time and only on Fridays. (*PageID#* 84). She indicated she stopped working because of her physical impairments, yet also noted she was fired because she was "not a very nice person to people. . . ." (*Id.*). She later tried working at a golf course one weekend but was physically unable to do that job because she had to continuously sit and stand.

Plaintiff testified she had neck surgery in May 2012 and she was not doing well. She still has trouble turning her head from side-to-side and suffers from pain. If she "had it all to do over again," she explained, "I really don't think I'd have the operation." (*PageID#* 86). Plaintiff also continues to have significant back pain and is unable to have physical therapy because of her surgery.

Plaintiff explained she continues to suffer from troubles with her bipolar disorder and depression. (*PageID#* 88). She stated, "I'm just depressed all the time. . . . I'm not good around people. To be around people I get aggravated and I get nervous, and – well, I

can't go out after dark either. That scares me because I got beat up once." (*PageID#* 89).[3]

Plaintiff goes to counseling about once every 2 months. She has been going to counseling for 3 years. She also sees a psychiatrist once every 1 to 2 months and is on medication for her bipolar disorder.

Plaintiff indicated she has not consumed alcohol for 2 years and stopped using drugs after she attempted suicide in July 2011. She indicated her physician is "urine testing me and it comes clean every month." (*PageID#* 93).

When asked to rate her neck pain on a scale of 0 to 10 – with 0 being "no pain" and 10 being "the worst pain you can imagine" – Plaintiff indicated the pain in her back and neck is a 10. She described it as a constant pain that lasts all day. She indicated her pain medication helps, but it makes her "unfunctionable." (*PageID#* 94).

Plaintiff estimates she can only walk 1 block, stand for 5-10 minutes, and sit for 15 minutes. She also experiences numbness in her right arm. She does not believe she can lift anything that weighs more than a gallon of milk. (*PageID#* 96). Plaintiff can make frozen meals in the microwave but is unable to sweep, mop, vacuum, and wash clothes. Her daughter does these tasks and grocery shops for her. Plaintiff is sometimes able to go to the dollar store for personal items, but "that's about it." (*PageID#* 97). Plaintiff testified her hobbies include watching movies and reading. (*PageID#* 98). Plaintiff is able to shower but can no longer raise her arms to do her hair or makeup. (*PageID#* 99).

---

[3] Plaintiff was attacked by three people when walking home one night approximately 3 years ago. She indicated they beat her up, as well as stole her coat, shoes, and purse. (*PageID#* 89).

4

On a typical day, Plaintiff testified she wakes up around 8:00 or 8:30, feeds her bird and fish, watches television, and drinks coffee. (*Id.*). Her daughter usually visits and brings or cooks breakfast. They sit and talk, and then her daughter "does whatever I need done around the house. . . ." Plaintiff usually gets a shower while her daughter is there, and then her daughter "goes about her way, and goes to her work or, you know, if she's off that day, then she stays the day, but if she has to work, then she leaves me, and I watch television or read a book, piddle around the house, and play with the bird sometimes, get him out of the cage and get him on the chair with me, and I've got a unique bird." (*PageID##* 99-100).

When cross-examined by her counsel, Plaintiff indicated she still contemplates suicide "quite often," approximately every week. (*PageID#* 102). She indicated her condition has actually worsened since her surgery, but even before she could not do any heavy lifting. (*PageID#* 103).

B.  **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

III.  **"Disability" Defined and the ALJ's Decision**

The Social Security Administration provides Supplemental Security Income (SSI) to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual."  42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[4]  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Thomas R. McNichols, II applied the Social Security Administration's 5-Step sequential evaluation procedure.  *See* 20 C.F.R. § 416.920(a)(4)(I)-(v).  Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "chronic neck and low back pain; depression; anxiety; history of cocaine abuse and alcohol dependence, in reported remission; and malingering (20 CFR 416.920(c))." (*PageID#* 55).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of

---

[4] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

Impairments, including Listings 1.04, 12.04 and 12.06.  (*PageID##* 56-58).

The ALJ concluded Plaintiff became disabled on May 12, 2012, however, the ALJ determined at Step 4 that before then, Plaintiff retained the residual functional capacity[5] to:

> perform medium work as defined in 20 CFR 416.967(c) with the following limitations: no climbing of ladders, ropes, or scaffolds; no work above shoulder level; simple, routine 1- or 2-step tasks (requiring little, if any, concentration); low stress jobs (defined as no production quotas and no over-the-shoulder supervision); no direct dealing with the general public; and limited contact with coworkers and supervisors and no teamwork.

(*PageID##* 58-65).  The ALJ also concluded at Step 4 that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms prior to May 12, 2012, are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (*PageID#* 60).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability prior to May 12, 2012.  (*Id.*).

## IV.     Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

---

[5] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.    Discussion**

The ALJ determined Plaintiff to be disabled as of May 12, 2012 – the date he incorrectly believed Plaintiff underwent a surgical cervical spine fusion.[6] The ALJ concluded that prior to May 12, 2012, Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c), with certain exertional and nonexertional limitations.  (*PageID#* 58).  Plaintiff argues the ALJ's finding she could perform any medium exertion work prior to her cervical spine fusion is unreasonable and unsupported by the record.  (Doc. #8, *PageID#* 1080).  According to Plaintiff, such a conclusion "represents nothing more than the ALJ unduly attempting to minimize any award of past-due benefits to Plaintiff."  (Doc. #8, *PageID#* 1081).  Plaintiff argues she did not have the residual functional capacity for more than light work between April 1, 2009 and May 11, 2012, and, therefore, it follows that under the Commissioner's Medical Vocational Guidelines an award of benefits is compelled during this period.  (*Id.*).

The Commissioner contends the ALJ was not required to find Plaintiff disabled prior to May 2012.  (Doc. #11, *PageID#* 1112).  According to the Commissioner, "Plaintiff fails to mention that treatment notes between August 2011 and April 2012 showed her symptoms were not as a severe as they were in May 2012, when she had the surgery."  (*Id.*).  The Commissioner argues that in light of evidence in the record, the ALJ's conclusion that Plaintiff was not disabled prior to May 12, 2012 was reasonable and should not be disturbed.  (Doc. #11, *PageID#* 1113).

---

[6] Plaintiff's surgery was actually performed on May 17, 2012.  (*PageID##* 1003-26).

9

A review of the record indicates the ALJ's finding that Plaintiff can perform medium exertion work between April 1, 2009 and May 11, 2012 is not supported by substantial evidence in the record.  Social Security defines the physical exertion requirements of "medium work" as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. . . ." 20 C.F.R. § 404.1567(c).  Contrary to the ALJ's findings and the Commissioner's argument, Plaintiff did not suddenly become unable to meet the physical demands of full-time medium exertion work only after her multilevel cervical spine fusion in May 2012.  Plaintiff's treatment notes indicate she suffered from significant neck pain throughout the entire period at issue, not just after her surgery.  *See PageID##* 630, 802-05, 901-05, 932-63, 966, 973.  She underwent physical therapy in January and February 2011, noting significant neck pain. (*PageID#* 901-05).  Her pain was so severe by July 2011 that Plaintiff even attempted suicide. (She "presented to the [Emergency Department] with altered mental status after she overdoes with Valium, trazodone, and Vicodin.  The patient drank 7 beers the night before admission.  She stated that she was trying to kill herself because of her back and neck pain.")(*PageID#* 933).  Even the ALJ acknowledged in his decision that Plaintiff's moderate to severe degenerative disc changes were evidenced in an MRI performed in August 2011, 9 months prior to surgery.  (*PageID#* 66) ("a cervical spine MRI in August 2011 showed moderate to severe degenerative changes (Exhibit 39F)").  Moreover, Plaintiff also testified she was unable to lift more than a gallon of milk and could never do any heavy lifting.  *PageID##* 96, 103; *cf.* 20 C.F.R. § 404.1567(c) ("Medium work

10

involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. . . .")

For these reasons, substantial evidence does not support the ALJ's conclusion that Plaintiff could perform medium exertion work at all times prior to May 11, 2012. Accordingly, Plaintiff's Statement of Errors is well taken.[7]

## VI.     Reversal and Remand for Benefits

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

---

[7] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is presently unwarranted.

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

In this case, the ALJ's finding that Plaintiff can perform medium work activity prior to May 12, 2012 is not supported by substantial evidence. Accordingly, given that Plaintiff could have – at most – performed light work activity from April 1, 2009 through May 11, 2012, she was of "advanced age" during all relevant periods, has a high school education (not providing for direct entry into skilled work[8]), and has skilled or semiskilled previous work experience (skills not transferable), *see PageID#* 68, Grid Rule 202.06 directs a finding of "disabled." *See* Grid Rule 202.06, Appendix 2, Subpart P, Part 404.

For these reasons, an Order remanding this case for benefits is warranted. *See Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).[9]

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability decision be reversed;

---

[8] *See* 20 C.F.R. 404 Subpart P, App. 2, § 202.00(c).

[9] Although, for the purposes of Social Security, "[a]n individual shall not be considered to be disabled . . . if alcoholism and drug addiction would . . . be a contributing factor material to the Commissioner's decision that the individual is disabled," 42 U.S.C.S. § 423(d)(2)(c), the ALJ determined in this case that "the record contains no evidence that [Plaintiff's] substance use has any effect on her physical condition . . . ." (Doc. #6-2, *PageID#* 68).

2. Plaintiff Brenda S. Bingham's application for Supplemental Security Income be REMANDED to the Social Security Administration under Sentence 4 of 42 U.S.C. § 405(g) for payment of SSI consistent with a Decision adopting this Report and Recommendations and with the Social Security Act; and,

3. The case be terminated on the docket of this Court.

July 13, 2015

                                                    s/Sharon L. Ovington
                                                    Sharon L. Ovington
                                            Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).